UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,                                    Case No. 1:05-CR-160

v                                                Hon. ROBERT HOLMES BELL

CAROLYN ROSS,

               Defendant.

_____/

## REPORT AND RECOMMENDATION

Defendant is charged in a two-count Indictment with contracting the successful murder of her husband's teenage girlfriend, in violation of 18 U.S.C. § 1958.   This is a death penalty case.  Defendant is presently before the court on the issue of detention.  For the reasons discussed below, I respectfully recommend defendant be detained pending trial.

### Background

The procedural aspects of the issue of detention are somewhat unusual in this case. Defendant was arrested in Ohio, and a full detention hearing was held in the U.S. District Court for the Southern District of Ohio on January 29, 2007.  Based upon the evidence presented to him, the magistrate judge in Ohio concluded that there were conditions of release that would adequately assure the safety of the community and defendant's appearance at future court proceedings.  He placed defendant on electronic monitoring, travel restrictions, and pretrial supervision, as well as a $200,000 unsecured appearance bond with a 10% deposit.  Order of Magistrate Judge Kemp, January 31, 2007.  The following day, in response to a  motion by the government, the Chief Judge

1

of this court stayed Judge Kemp's order pending a review by this court pursuant to 18 U.S.C. § 3145(a)(1).

Defendant initially appeared in this court on March 8, 2007 before Magistrate Judge Timothy P. Greeley. Judge Greeley appointed counsel for defendant and directed counsel to respond to the government's request for detention within 14 days.

Defendant was arraigned before me on March 15, 2007, entered a plea of not guilty, and I granted the court granted defense counsel's request for an extension of time to file a response to the government's motion. The court has orally referred the matter to me for further proceedings in regard to detention, and a full evidentiary hearing was held March 28, 2007.

### Nature of Proceedings

Title 18 U.S.C. § 3145(a)(1) provides that if a person is ordered released by a magistrate judge from another federal district, the government may file in this court (the court having original jurisdiction over the offense) a motion to revoke the order of release. § 3145(a)(1); *See, e.g., United States v. Torres,* 86 F.3d 1029 (11th Cir. 1996) (plain language of § 3145 dictates that district court with original jurisdiction over the offense, the prosecuting district, was only proper one to review release order issued by magistrate from another district where defendant had been arrested); *United States v. Cisneros,* 328 F.3d 610 (10th Cir. 2003) (district court in New Mexico had authority under § 3145(a) to review and revoke pretrial release order entered by magistrate judge in Arizona because district court in New Mexico had original jurisdiction over offense).  Although the statute is not explicit, and there is surprisingly little case law on this subject (in light of the number of detention hearings held nationwide every year), it is generally assumed that the review under § 3145(a)(1) will be conducted by a district judge, *e.g., Cisneros,* 328 F.3d at 615, utilizing

2

a *de novo* standard of review. *See United States v. Rueben,* 974 F.2d 580, 585 (5th Cir. 1992); *United States v. Tora-Tora,* 922 F.2d 880, 883 (1st Cir. 1990); *United States v. Delker,* 757 F.2d 1390, 1392-95 (3rd Cir. 1985).

Having said that, there appears to be absolutely no reason why the district judge conducting the review cannot initially refer the review to a magistrate judge in his own district on a report and recommendation basis. The statute does not prohibit it, and addressing the issue of detention is hardly foreign territory to a magistrate judge since it is one of a magistrate judge's core responsibilities. Moreover, a report and recommendation provides the district judge with the same opportunity to conduct a *de novo* review that would occur if the district judge handled the review personally in the first instance. 28 U.S.C. § 636(b)(1).

This procedure is particularly useful in this instance. First, a new hearing was necessary in this case. Although this court has a copy of the order entered by the magistrate judge in Ohio, the transcript of the underlying hearing is replete with "inaudible" statements by witnesses. Defendant's counsel has also listened to the tape of that hearing and describes it as "gibberish." Second, a new hearing has afforded both parties the opportunity to call witnesses with first-hand knowledge of the case which were not available to the Ohio judge. Finally, this is precisely the type of proceeding where an initial consideration of the matter by a magistrate judge on a report and recommendation basis is a time saving device for the district judge.[1]

Accordingly, I determined the appropriate way to proceed was to conduct an evidentiary hearing where live testimony from within the district could be taken, and to render a

---

[1]This is a point not to be overlooked in a court which currently has three-fourths of its active district judgeships vacant.

report and recommendation to the district judge, which will allow a *de novo* review of the detention issue on the court's part as well, as an opportunity for further input by the parties in the form of objections.

## Standard of Proof

The standard of proof in a detention hearing is well established. The government bears the burden of proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required, or proving by clear and convincing evidence that no condition or combination of conditions will assure the safety of any other person or the community. 18 U.S.C. § 3142(f).

## Factors to be Considered at a Detention Proceeding

The factors to be considered by the court in a detention proceeding are set forth in 18 U.S.C. § 3142(g). The court is to take into consideration available evidence concerning (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including among other things, the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, record of appearances at prior court proceedings, whether the defendant was on probation or parole, etc., and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). In this regard, detention may be ordered based upon a finding that the defendant is likely to continue to engage in criminal activity which poses a

threat either to the community or to the safety of the particular person. *See. E.g., United States v. Daniels*, 772 F.2d 382 (7th Cir. 1985); *United States v. Yeaple,* 605 F.Supp. 85 (M.D. Pa. 1985).

There is no requirement that these categories be given equal weight.  First, the facts in a particular case may be very well developed in some categories and not in others, thereby necessarily rendering the latter categories of less significance.  Second, the categories themselves have not been historically of equal significance.  For example, even before passage of the present Bail Reform Act in 1984, consideration of a defendant's dangerousness could still be considered by a judge making a pretrial release decision in a capital case, and in fact could serve as a basis for denial of relief only in such a case.  The special conditions for release in capital cases under the old 18 U.S.C. § 3148 were held in *United States v. Kennedy,* 617 F.2d 557 (9th Cir. 1980), to be derived from the particularly dangerous nature of such offenses, so that consideration of danger continued to be appropriate irrespective of the fact that the death penalty could not be imposed at that time in light of *Furman v. Georgia,* 408 U.S. 238 (1972).  Thus, capital cases, such as the present one, have always been considered in a class by themselves, even for purposes of denial of bond.

Now, with the death penalty back on the table, capital cases have taken on even greater significance in this respect.  As noted by the magistrate judge  in Ohio, "Other courts have given considerable weight to the prospect of the death penalty in assessing whether a defendant has an incentive to flee.  *See, United States v. Gonzalez,* 995 F.Supp. 1299, 1302 (D. N.M. 1998) (death penalty creates "strong incentive to flee prior to trial"); *United States v. Nichols,* 897 F.Supp. 542, 547 (W.D. Okla. 1995)(same)", citing *United States v. Eischied,* 315 F.Supp. 2d 1033, 1037 (D. Ariz., 2003).  Order of Judge Kemp, *supra* at 4.

On the other hand, the factor of community ties is of considerably less significance. In its report analyzing the 1984 Bail Reform Act legislation, the Senate Judiciary Committee noted that

> "with respect to the factor of community ties, . . . it is aware of the growing evidence that **the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community.** While the Committee considered deleting the factor altogether, it has decided to retain it at this time.  However, the Committee wishes to make it clear that it does not intend that a court conclude there is no risk of flight on the basis of community ties alone; instead, a court is expected to weigh all the factors in the case before making its decision as to the risk of flight and danger to the community." (citations omitted) (emphasis added)

S. Rep. No. 98-225, at 24 (1983).

With all these considerations in mind, the court addresses the first of the four categories set forth under § 3142(g), and notes that the charges in this case involve three aspects of that category alone.  The charges involve a crime of violence, a minor victim, and a firearm. Testimony from the hearing shows that the victim, Chrissy Satterfield, was shot several times through a screened window at point-blank range (approximately two feet away), while she was taking a shower at her grandmother's house during the early morning hours of August 5, 1996.  She was 16 years old at the time.  Thus, the circumstances of the crime show it to be particularly brutal. But the nature of this murder was significant as well.  It was committed by a contract killer who had no personal relationship with the girl, who was hired prior to the killing, who made deliberate preparation to commit the crime, including inspecting the alley providing access to the bathroom window prior to the time of the offense, and who received payment following completion of the act.

It was, in short, a deliberate, cold-blooded contract killing of a vulnerable and defenseless young girl. These facts resound very strongly in favor of the government's motion.

The weight of the evidence against the defendant is compelling, although it is primarily testimonial.

First, this is a case in which the defendant has already been indicted, which means that a grand jury has found probable cause.[2]

Second, testimony of the hearing established that the victim had been having a long-standing affair with Willie Ross, husband of the defendant, which was well known in their community. Various witnesses testified at the trial of the shooter, Joshshan Childs (who was convicted January 27, 2007), as to the present defendant's intense anger over her husband's affair with Chrissy, which she seemed powerless to prevent. One witness, Ron Glover, testified that Ross was so angry she asked him for a gun to kill her husband. Glover also stated that Ross said "someone would die" if she saw Chrissy and her husband in a compromising position with her own eyes.

Jacqueline Love, defendant's cousin, testified as to discussions between Childs and Ross during which Ross offered to pay Childs $5,000.00 to murder Chrissy. Love also testified that the day after the murder, she saw Ross pay Childs. There have also been statements made by Doreen Dortch, Childs' aunt, that she overheard a conversation between Childs and a third co-

---

[2]In evaluating the 3142(g) factors, my colleague in Ohio found that the weight of the evidence was a "neutral factor" in determining detention, notwithstanding the grand jury indictment. While I would consider a grand jury indictment to be a matter weighing in favor of detention rather than a neutral factor, this court, unlike the one in Ohio, has had the benefit of live testimony by the investigating agents regarding this crime. This is a significant factor in this court reaching a result different from the first court.

conspirator, Sims, where the two discussed their involvement in the murder.  Childs' fingerprints were found on the bathroom window sill.

Shortly after the Satterfield killing, Ross moved to the Columbus, Ohio area.

Defendant's personal history indicates that she has established a reputable life in Ohio.  She lives in her fiance's home.  Family and co-workers have testified in her behalf in person and by letter.   Until her arrest, she had been employed for 4 1/2 years as a nurse's aide at a retirement center in Grove City, Ohio, and she was pursuing a nursing degree through AEI South Ohio College in Findlay, Ohio.  She has maintained her current address for a number of years and was interviewed at her home on one occasion by an FBI agent from Grand Rapids,[3] who suggested to her in the course of the investigation she might be a suspect, and she did not thereafter flee.  These community ties favor defendant.

Defendant has no prior felony criminal record, but testimony at the hearing indicated that she has been involved in serious criminal conduct in the past.  Apparently her now ex-husband, Willie Ross, who was previously convicted as a drug dealer in this court, said that she was heavily involved with assisting him in managing his drug distribution business.  The government was prepared to indict her, but foregoing any prosecution against her was the price Willie Ross insisted upon for his cooperation in helping the government obtain numerous indictments of other drug dealers.  This fact puts defendant's life in the community in a different perspective and, of course, favors the government.

---

[3]Defendant's witnesses at the hearing testified they believed the FBI had visited defendant at her home on more than one occasion, but the only identified FBI Special Agent investigating the case, Special Agent Al Di Brito, testified he had gone to defendant's home in Ohio only once, in 2004.

Defendant travels frequently to Canada, and has gone to Jamaica, where her fiance comes from and has family.  The government argues that neither of these countries will extradite persons to this country facing the death penalty.  These facts make flight a feasible, indeed inviting possibility, considering the alternative, and favor the government.

Finally, in assessing the nature and the seriousness of any danger to another person that would be posed by the defendant's release, the court is mindful of the nature of the crime in this particular instance.  In order to alleviate a very real problem in her life (her husband having an affair with a 16-year-old girl), she allegedly chose to resolve that problem by hiring somebody, for a few thousand dollars, to kill one of the two persons having the affair, effectively ending it.  Today, defendant faces an even more serious problem, that is, a possible murder conviction which could result in a lifetime spent in prison or even her own execution.  And, as she must be well aware, the prosecution will be relying heavily upon testimonial evidence which is as vulnerable as Chrissy Satterfield.

The government has no hard evidence that the defendant has tried to obstruct justice, although it points out that the defendant and her husband apparently did show up uninvited outside the grand jury room during the time witnesses were being called to testify regarding Willie Ross.  However, the court need not consider such evidence to reach the obvious conclusion that a person capable of one contract murder would be capable of another.

The magistrate judge in Ohio found two cases in which courts released defendants in death penalty cases.   However, the fact that some defendants in murder cases have been released

9

only establishes that it is a possibility.[4]  By the same token, the death penalty creates a "strong incentive to flee prior to trial."  *See, United States v. Gonzalez,* 995 F. Supp. 1299, 1302 (D. N.M., 1998; *United States v. Nichols,* 897 F. Supp. 542, 547 (W.D. Okla., 1995).  In the end, the requirement that the court is to review a number of factors simply means that each case must be decided upon its own merits.

## Conclusion

Weighing all the factors, and for the reasons discussed, I find the government has shown by a preponderance of the evidence that there is no condition or combination of conditions that will assure the presence of the defendant for future court proceedings.  Notwithstanding the fact that she has maintained a settled life in recent years in Ohio, she did not previously face a murder indictment carrying the death penalty.  Given the ease with which she could slip across the border to Canada, which she visits annually, or go to Jamaica where her fiance has family, two countries that apparently will not extradite a person facing a possible death sentence, coupled with the fact that she left Grand Rapids and moved to Ohio shortly after the murder for no apparent reason,  it is difficult for the court to realistically fashion any conditions that will prevent defendant's flight.

---

[4]One of the two cases cited was *United States v. Barnett,* 986 F. Supp. 385 (W.D. La., 1997) (setting bond conditions for two defendants involved in attempted murder-for-hire scheme).  The same day the magistrate judge in Louisiana issued that opinion, however, a district judge reversed him as to defendant Barnett, who was then detained.  *United States v. Barnett,* 986 F. Supp. 405 (W.D. La., 1997).  The remaining defendant was released on a half-million dollar secured bond.

In the other case, *United States v. Eischeid,* 315 F. Supp. 2d 1033 (D. Ariz., 2003), where a member of the Hells Angels was charged with taking a woman to a remote desert location, stabbing her repeatedly, and leaving her to die, a district judge released the defendant when the government failed to provide testimonial or witness testimony in support of its assertions.

Alternatively, the court finds that the government has also proven by clear and convincing evidence that no condition or combination of conditions will assure the safety of the community or individuals in it. Specifically, the court is extremely concerned about potential danger to the witnesses who will have to testify against the defendant in this matter. Testimonial evidence will be key to any conviction in this case, and there is probable cause to believe that the defendant has already had one person murdered who caused her a serious problem.

Accordingly, I respectfully recommend that the order of release entered January 31, 2007 in the Southern District of Ohio be revoked and defendant be detained[5] pending trial.

Dated:  April 6, 2007                              /s/ Hugh W. Brenneman, Jr.                          
                                                   Hugh W. Brenneman, Jr.
                                                   United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[5]Any order of detention is required to contain the following language: "The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States, or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States marshal for the purpose of an appearance in connection with a court proceeding."